IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRANDON L. MORRIS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BRUCE BURNHAM,<br><br>　　　　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-184-CW<br><br>Judge Clark Waddoups |

Plaintiff Brandon Morris is a *pro se* prisoner proceeding *in forma pauperis.* He raises claims under 42 U.S.C. § 1983 as to Defendant Dr. Bruce Burnham's inadequate medical treatment of Plaintiff's seizures and other issues while at Utah State Prison (USP). (*See* Dkt. No. 6.)

Defendant filed a *Martinez* report with medical and other records and Defendant's declaration regarding Plaintiff's treatment. (Dkt. No. 20.) Defendant then moved for summary judgment on Plaintiff's claims, asserting qualified immunity. (Dkt. No. 24.) Plaintiff's response to the *Martinez* report and summary-judgment motion lacks substantive argument and evidentiary support.

### SUMMARY-JUDGMENT & QUALIFIED-IMMUNITY STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Factual assertions may be supported by,

> citing to parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

1

> declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at 56(c)(1). A primary purpose of the summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986).

Ordinarily, the party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

However, when a defendant asserts qualified immunity at summary judgment, the standard Rule 56 burden shifts from the moving defendant to the plaintiff. Plaintiff then has the heavy burden to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). Here, Plaintiff has done nothing to rebut qualified immunity.

## UNDISPUTED MATERIAL FACTS

Based on review of the record here, and in light of Plaintiff's failure to substantively oppose Defendant's Motion for Summary Judgment, the Court finds the following:

- **Seizures**

1. Plaintiff first complained of seizures in April 2009. Depakote was prescribed to control possible seizure activity. (Burnham Decl. ¶ 6, Dkt. No. 20-1; Ex. 2, Medical Records at 68, 72, Dkt. No 20-2.)

2. Defendant initially saw Plaintiff about seizures on January 12, 2010. Defendant was concerned whether Plaintiff was taking his seizure medications as prescribed. (Burnham Decl. ¶ 7; Ex. 2, Medical Records at 57.)

3. On January 19, 2010, as recommended by USP staff, Plaintiff went to the University Medical Center (UMC) neurology department to be tested for possible epileptic seizures. UMC did a continuous electroencephalogram (EEG) and MRI of Plaintiff's brain. There was no evidence of epileptic seizures. (Burnham Decl. ¶ 8; Ex. 2, Medical Records at 56, 97.)

4. Before UMC's assessment, Plaintiff was prescribed Dilantin and Tegretol to control his seizure-like symptoms. Defendant guessed that Plaintiff had not complied with his prescribed medication regimen because those medications would control any seizure activity. (Burnham Decl. ¶ 9; Ex. 2, Medical Records at 56.)

5. In March 2010, in consultation with neurologists, it was recommended that Plaintiff be tapered off anti-seizure medication Gabapentin. USP staff instead prescribed Dilantin for Plaintiff's complained-of symptoms. (Burnham Decl. ¶ 10; Ex 2, Medical Records at 53-54.)

6. On June 4, 2010, Plaintiff returned from a second visit to UMC for follow-up assessment of seizures. UMC specialists said no epileptic seizures were detected, but agreed Plaintiff should continue Dilantin. (Burnham Decl. ¶ 11; Ex. 2, Medical Records at 95-96.)

7. UMC's neurological clinic never diagnosed Plaintiff with epilepsy or seizure disorder. (Burnham Decl. ¶ 12; *see generally* Exhibit 2, Medical Records.)

8. In March 2011, USP continued to prescribe Dilantin and Tegretol for Plaintiff, despite concern that he was not having real seizures. (Burnham Decl. ¶ 13; Ex. 2, Medical Records at 44.)

9.      On December 24, 2012, Plaintiff asserted he had a seizure, fell and broke his nose. Records show that, at the time, Plaintiff was refusing his morning dose of Tegretol. On January 4, 2013, Defendant saw Plaintiff again and noted that his nasal fracture was healing nicely. (Burnham Decl. ¶ 14; Ex. 2, Medical Records at 31, 32.)

10.     Plaintiff continues to receive drugs for his ongoing reports of seizure-like symptoms. As of April 2016, he was still receiving Tegretol. (Burnham Decl. ¶ 15; Ex. 2, Medical Records at 110.)

- **Weight Loss**

11.     In June 2013, USP medical staff saw Plaintiff for weight loss. He was prescribed a calorie supplement of "instant breakfast." Plaintiff took this supplement from at least July 2013 until March 2016. As of April 28, 2016, Plaintiff weighed 180 pounds (Burnham Decl. ¶¶ 16-17; Ex. 2, Medical Records at 9, 14, 17, 18, 19, 22, 23, 105, 106.)

- **Abdominal and Other Issues**

13.     On March 8, 2011, Defendant saw Plaintiff about several issues: seizures, weight loss, and abdominal and bowel problems (a historical issue). Defendant thought Plaintiff might have irritable bowel syndrome (IBS), for which Plaintiff was prescribed fiber and Bentyl. (Burnham Decl. ¶ 18; Ex. 2, Medical Records at 44.)

14.     On June 7, 2011, Plaintiff, who also has a history of anxiety and hypochondria, complained of a rash on his neck and penis. Plaintiff said he had difficulty urinating but also that he was not having urinary problems. Defendant did not note any serious skin problems and recommended that Plaintiff continue using previously prescribed skin cream. (Burnham Decl. ¶ 19; Ex.2, Medical Records at 42.)

15. Plaintiff's complaints of abdominal symptoms are chronic, yet lab results for pelvic, abdominal and rectal pain have been normal. Defendant treated Plaintiff for prostatitis but Plaintiff continued to report symptoms. Defendant thinks there may be a psychogenic piece to Plaintiff's complaints. (Burnham Decl.¶ 20; Ex. 2, Medical Records at 17.)

16. To thoroughly investigate Plaintiff's reports of abdominal symptoms, Plaintiff was sent to UMC for a colonoscopy, which showed nothing of concern. (Burnham Decl. ¶ 21; Ex. 2, Medical Records at 11, 12.)

- **Mental Health**

17. Defendant does not treat Plaintiff's mental-health concerns. Defendant believes, however, that many of the medical issues that Plaintiff raises are psychological, not physiological, in origin. Plaintiff has been diagnosed with borderline personality disorder. USP records show that USP mental-health providers have routinely and consistently assessed and treated, and continue to treat, Plaintiff's mental-health issues. (Burnham Decl. ¶ 22.)

## ANALYSIS

**1. Defendant Was Not "Deliberately Indifferent" to Plaintiff's Medical Needs.**

To succeed in this claim under the Eighth Amendment, Plaintiff must demonstrate acts or omissions harmful enough to show deliberate indifference that offends "'evolving standards of decency.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). The Eighth Amendment proscribes only deliberate indifference constituting the "'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious* medical needs." *Id.* at 104 (emphasis added). Plaintiff has to show that Defendant's actions were more than negligent. After all, negligent failure to give

5

sufficient medical care, even touching medical malpractice, does not equal a constitutional violation. *Id*. at 106.

The deliberate-indifference standard from *Estelle* has an objective component asking whether the alleged deprivation is "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component necessarily questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992); *see Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, to state an Eighth Amendment claim, Plaintiff must show he suffered from a serious condition that Defendant knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendant caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

Here, Plaintiff's claims fail because Defendant did not disregard a substantial risk of serious harm to Plaintiff's health or safety from seizure activity. Rather, Defendant and USP staff answered Plaintiff's many medical requests and even referred him to UMC twice for neurological evaluations. (Burnham Decl. ¶¶ 8, 11; Ex. 2, Medical Records at 47-48, 51, 54, 56-57, 95-98.) UMC saw no evidence of epileptic seizures. (Burnham Decl. ¶ 8; Ex. 2, Medical Records at 95-98.) As a precaution, though, Plaintiff still received anti-seizure medications. (Burnham Decl. ¶¶ 9, 10.) Records show Plaintiff continued this treatment at least through April 2016. (Ex. 2, Medical Records at 10, 11, 16, 19, 29, 31, 36, 44, 47-48, 51, 56, 59, 64,

110.)

Plaintiff's alleged weight-loss claim also fails. It was promptly addressed with instant-breakfast supplements. Though Plaintiff alleges these supplements were discontinued, Plaintiff's medical records show otherwise. They began in June 2013 and continued into 2016 at least. (Burnham Decl. ¶ 16; Ex. 2, Medical Records at 9, 14, 17, 18, 19, 22, 23, 106.) Moreover, as of the date of Defendant's *Martinez* report, Plaintiff was at a healthy weight. (Burnham Decl. ¶ 17; Ex. 2, Medical Records at 108.)

Finally, Plaintiff's claims as to abdominal and anal pain also fail to show an Eighth Amendment violation. Defendant treated Plaintiff for what he believed was IBS. Many of Plaintiff's symptoms are chronic and Defendant attributes most to anxiety and hypochondria. (Burnham Decl. ¶¶ 18-21.) Even so, Plaintiff has been treated for each of these reports, including mental-health concerns. (Ex. 2, Medical Records at 42-44, Burnham Decl. ¶ 22.)

2. **Plaintiff Received Prompt, Frequent, and Reasonable Medical Care. Disagreement with Diagnosis and Treatment Does Not Support Deliberate Indifference Claim.**

When the only dispute about a prisoner's medical treatment regards adequacy, "courts are generally reluctant to second guess [professional] medical judgments." *Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 U.S. Dist. LEXIS 72842, at *3 (D. Utah Sept. 23, 2008) (unpublished) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)); *see Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). It is well settled in the Tenth Circuit that mere disagreement between a prisoner and prison medical staff as to diagnosis or treatment does not support a deliberate-indifference claim. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1536 (10th Cir. 1992); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Eighth Amendment violations occur only when medical treatment is so grossly incompetent, inadequate, or excessive as to "'shock the conscience or be intolerable to fundamental fairness.'"

*v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (unpublished) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). An inmate's belief that he should have been treated differently does not show "deliberate indifference." *Scott v. Gibson*, 37 F. App'x 422, 423 (10th Cir. 2002) (unpublished) (citing *Olson*, 9 F.3d at 1477).

Here, Plaintiff's claims are, at best, a "difference of opinion" as to diagnosis and treatment. *See Olson* 9 F.3d at 1477. Nothing in Plaintiff's medical records supports a diagnosis of seizure activity. (Burnham Decl. ¶¶ 8, 11, 12). Still, when Plaintiff reported seizures, he was prescribed Depakote, Tegretol, and Dilantin. (Burnham Decl. ¶¶ 6, 9, 10, 13, 14; Ex. 2, Medical Records at 31, 32, 44, 53, 54, 56, 68, 72, 110). Further, Plaintiff's allegations that he did not receive "proper, adequate and necessary medical care," (Compl. ¶ 20, Dkt. No. 6), are nothing more than Plaintiff's differing opinion as to the judgments made by medical professionals who continually evaluated Plaintiff's conditions from 2009 to 2016. (Burnham Decl. ¶¶ 6-15.) Plaintiff's medical records clearly show his concerns and requests were consistently addressed. (*See generally* Exhibit 2, Medical Records.)

The Tenth Circuit has rejected inmate Eighth Amendment claims like those here. *See Mosley v. Snider*, 10 F. App'x 663, 664-65 (10th Cir. 2001) (unpublished) (stating mere disagreement with treatment does not implicate Eighth Amendment when doctor decided medication not needed and inmate declined alternative); *see also Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (rejecting deliberate indifference when doctor would not prescribe treatment recommended by other doctor).

As a matter of law, offering treatment based on a professional's medical judgment, even if it is not what an inmate wants, does not rise to the level of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied,

absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Also, when records show an inmate has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-cv-01375, 2011 U.S. Dist. LEXIS 125825, at *32 (D. Colo. Aug. 10, 2011) (missing subjective intent for deliberate indifference when defendants responded to grievances, examined plaintiff, and prescribed treatment more than fifteen times). Here, Plaintiff was evaluated twice by neurology specialists and five times by gastroenterologists at UMC. (*See* Ex. 2, Medical Records at 77-99). And, Plaintiff's medical records show that Plaintiff received ongoing medical help from USP medical staff for each medical issue raised. (*See* Burnham Decl. ¶¶ 6-25.)

### 3. Qualified Immunity Applies -- Treatment Not Unreasonable or Conscience Shocking.

As noted, Plaintiff sues Defendant because he disagrees with diagnosis and treatment plans. (Compl. ¶¶ 8-10, 15, 19.) The United States Supreme Court has held that "protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 815 (2009) (citation omitted). The Tenth Circuit has similarly held that qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity may be denied if, on an objective basis, it is obvious that no reasonably competent official would have concluded that the actions were constitutional.

9

*Malley v. Briggs*, 475 U.S. 335, 341 (1986). But "'if off[icials] of reasonable competence could disagree' about the lawfulness of the challenged conduct, then '[qualified] immunity should be recognized.'" *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006) (quoting *Malley*, 475 U.S. at 341). Further, when the medical community disagrees as to the best treatment plan, an informed judgment as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).

Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendant was unreasonable in relying on his own judgment and UMC specialists' diagnoses, and administering treatment accordingly. In fact, Defendant followed UMC's recommendations though he did not believe Plaintiff was having seizures. Defendant merits qualified-immunity protection.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment, (Dkt. No. 24). This order **MOOTS** the Plaintiff's two pending motions to settle the case, (Dkt. No. 27, 30).

Furthermore, the court **DENIES** Plaintiff's request for extension of time to pursue discovery, (Dkt. No. 32), as well as his overbroad requests for discovery in this case, (Dkt. No. 22). As an initial matter, Plaintiff has had ample time to respond with evidence that defeats Defendant's Motion for Summary Judgment. At Plaintiff's request, the court ordered the Defendant serve another copy of the motion on Plaintiff in October 2016. (Dkt. No. 28.) Since then, Plaintiff has had the opportunity to present the court with some evidence showing a genuine issue of material fact in his case. Defendants provided a *Martinez* Report to the Court and Plaintiff in May 2016. (Dkt. No. 20; *see Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir.

1991) ("[W]e have authorized the district courts to require a *Martinez* report to develop a basis for determining whether a prisoner plaintiff has a possibly meritorious claim. The purpose of the *Martinez* report is to identify and clarify the issues plaintiff raises in his complaint."). The Report included comprehensive medical records that Plaintiff has not disputed in any way.  In response to the motion for summary judgment, Plaintiff simply rests on "the averments of his pleadings" and requests the court extend time for further discovery, (*see* Dkt. Nos. 31, 32), without identifying any information that may be missing or explaining how such information may be relevant to the claims in this case. These filings are insufficient to halt summary judgment.  *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) ("A party seeking to defer a ruling on summary judgment under Rule 56(f) [now 56(d)] must file an affidavit that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts."); *see also Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008) ("A party may not invoke Rule 56(f) [now 56(d)] by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion.").

In opposing a properly supported motion for summary judgment, Plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Plaintiff has failed to do so here. Thus, the court **DIRECTS** the clerk to close this case.

DATED this 27th day of March, 2017.

BY THE COURT:

CLARK WADDOUPS
United States District Judge